HENRY F. ROSS *vs.* HARRISON BLISS.

A declaration alleged that the defendant, by a memorandum signed by J. S., who was duly authorized by the defendant, sold a house to the plaintiff; but that the defendant refused to convey it. The answer denied that the defendant ever made or authorized J. S. to make any such memorandum, that he ever authorized J. S. to offer the house for sale, or that he ever sold or offered to sell the house to the plaintiff; and alleged that he had agreed to convey it to a third person on the performance of certain conditions, that the conditions had never been performed, and that the assignees in bankruptcy of such person undertook to sell it without the defendant's consent. *Held*, that under this answer it was open to the defendant to show not only that he did not authorize J. S. to sign the memorandum, but that J. S. did not make the sale and memorandum on his behalf.

CONTRACT. The first count of the declaration alleged that on August 18, 1870, the defendant, by a certain note or memorandum, signed by B. W. Abbott, who was duly authorized thereto by the defendant, agreed with the plaintiff to sell to him a certain house, being the house No. 3 Bliss Street, in Worcester, and the lot on which the same stood, for the sum of $25 above a certain claim existing on the property; and that the plaintiff paid said sum and demanded a deed of the property from the defendant; but that the defendant wholly refused to convey the land to the plaintiff.

The second count alleged that on August 18, 1870, the defendant offered said house and lot for sale at public auction, subject to a claim of about $2500 thereon, by and through B. W. Abbott, a duly licensed auctioneer, the defendant being present, directing the sale; that the same was struck off to the plaintiff for the sum of $25, he being the highest bidder therefor; that the plaintiff paid said sum then and there to Abbott, for the property, and Abbott, "acting as agent for both the plaintiff and the defendant in the premises, and being duly authorized to sign his own name

us auctioneer thereto, as and for the name of the defendant, and to bind him, made, executed and delivered to the plaintiff a memorandum in writing of the sale, signed by him under the aforesaid authority ; " and that the plaintiff thereafter demanded of the defendant a deed to be duly made and delivered of the house and lot, subject to said claim, whereof the defendant was owner subject to said claim ; but that the defendant refused. The memorandum, a copy of which was annexed to the declaration, was as follows :

" House No. 3. Henry F. Ross. $25. Received of Henry F. Ross twenty-five dollars, amount paid above a claim of twenty-five hundred dollars on house No. 3 Bliss Street, sold by auction, August 18, 1870. B. W. Abbott, Auctioneer."

The defendant in his answer alleged that he never made or authorized B. W. Abbott, as his agent or attorney, or for him, to . sign or make any such note or memorandum as alleged ; and that he never procured or authorized B. W. Abbott as an auctioneer, for himself, or as his agent, to offer for sale at public auction or otherwise the house and lot described in the declaration ; and he denied that he ever sold or offered to sell the described premises to the plaintiff, and that he ever, by himself or his agent, received any money towards the purchase or sale of the house and lot. He further alleged than by an agreement between him and J. W. Cookson, he agreed to convey the lot described in the declaration, with four others, to Cookson, and also to lend him money, and upon the repayment of the loan, and payment of a thousand dollars a lot, to convey the lots to him ; that Cookson became bankrupt, and all his rights under the agreement passed to his assignees ; that the assignees undertook to sell the lots without the consent of the defendant, but found they could not realize enough to pay the defendant the amount due to him under said agreement, and afterwards released all claim under the agreement to the defendant ; and that the terms of the agreement were never fulfilled or complied with by Cookson ; and the defendant denied that he was liable in any way as set forth in the declaration, left the plaintiff to prove all things necessary to maintain the action, and denied that he was obliged to convey the house to the plaintiff.

At the trial in the Superior Court, before *Bacon*, J., it appeared that the defendant made the agreement with Cookson set up in the answer, and advanced him $7500 under the agreement, so that the whole amount due to him on the five houses and lots was $12,500 ; that Cookson became bankrupt, and Thomas Earle and William H. Howland were appointed assignees of his estate ; that they published in the newspaper the following advertisement : " Assignees' Sale. Five Dwelling-houses on Bliss St., each 32 × 36, with French roof, slated, in an unfinished condition, ready for plastering, will be sold by auction, on Thursday forenoon, at ten o'clock, August 18. These houses are in a very desirable location, fine view and good air, and are very near the Technical School, and can always be filled with boarders, if desired. The lots are 60 feet by 100. For further particulars inquire of Thomas Earle, No. 40 Elm St. Thomas Earle, Wm. H. Howland, Assignees of estate of J. W. Cookson ; " and that the sale took place at the time appointed.

The evidence as to the sale, which was set forth at length in the bill of exceptions, but which it is not necessary to report in full, tended to show that the auctioneer announced that the houses were sold subject to a claim of $2500 on each, which could probably remain on mortgage, and that the defendant would give a warranty deed ; that the defendant assented to this statement ; that the plaintiff bid $25 above the claim ; that he was the highest bidder ; and that he paid the $25 to the auctioneer, and took the memorandum.

The defendant requested the judge to rule that there was no evidence in the case to warrant the jury in finding that the defendant authorized Abbott to execute and deliver to the plaintiff a memorandum as the contract of the defendant ; and also that if the plaintiff was informed at the sale that the sale was advertised and conducted for the assignees, and if the jury should be satisfied that it was so advertised and conducted, then the plaintiff could not recover against the defendant upon the evidence.

The judge declined so to rule, and ruled " that upon the pleadings the only question at issue was whether Abbott was author ized by the defendant to make this sale and execute the memo-

randum; that if Abbott was not authorized by the defendant to make this sale and execute the memorandum, the plaintiff could not recover; that the plaintiff must prove that Abbott had authority, either express or implied, from the defendant, to make this sale and this memorandum as his agent; that if he had express authority, verbal or written, it would be sufficient; that if he did not have actual authority to make the sale and the memorandum, still if the defendant did by his conduct hold him out as having such authority, or did, by his acts, declarations or silence, give the plaintiff reasonable cause to believe that Abbott had such authority, he would be liable for his acts; that if the defendant consented that the property should be sold by the assignees subject to his claim of $2500 on each house, and at the auction sale stated that he would give the warranty deed, he was bound by the memorandum; and that if the defendant, by his acts, declaration or silence led the plaintiff reasonably to suppose that he authorized the sale by Abbott, he would be liable, although the plaintiff knew other parties had advertised the sale."

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*G. F. Hoar & T. L. Nelson,* for the defendant.

*H. B. Staples & F. P. Goulding,* for the plaintiff.

WELLS, J. The action, in each count, is founded upon a written memorandum of sale, signed by Abbott as auctioneer. The memorandum does not disclose the name of the principal for whom the sale was made. In order to recover, it was necessary for the plaintiff to show that this was the contract of the defendant.

The issue upon this point embraced two questions entirely distinct in their nature, and each equally essential: first, whether the sale and memorandum were made by Abbott in behalf of the defendant as principal; second, whether he was authorized by the defendant to act for him.

There was evidence sufficient to maintain the verdict of the jury, if the question of authority had been the only one involved, as in *Taft* v. *Baker,* 100 Mass. 68.

Ross *v.* Bliss.

The court ruled and instructed the jury that "upon the pleadings the only question at issue was whether the auctioneer was authorized by the defendant to make this sale and execute the memorandum." This was erroneous. If the allegation of the defendant's answer, that "he never made or authorized" Abbott to make the written memorandum, is ambiguous, it is aided by the further allegation denying "that he ever sold or offered to sell the described premises to the plaintiff." The answer also avers that the sale was made by the assignees of Cookson on their own account.

The important question is, not whether Abbott signed and delivered the memorandum as auctioneer, but whether he did so in behalf of the defendant, or of the assignees of Cookson.

It was not claimed by the plaintiff that the defendant employed the auctioneer before the sale, or that he expressly authorized him to sign the memorandum. Upon the undisputed evidence, the sale was advertised as a sale by the assignees. The whole evidence is consistent with its being so in fact, and not a sale by the defendant.

If the defendant was the principal so as to be charged as such upon the written memorandum, he must be held to be the principal also for the purpose of enforcing it against the purchaser. But the case clearly finds that he neither had nor claimed any interest in the proceeds of sale above the supposed incumbrance of $2500. The entire bid of $25, named in the memorandum as the price to be paid by the purchaser for what was then sold, was in excess of the defendant's claim. He was not entitled to it, and it was not to be paid to him.

The whole evidence tends strongly to show, if it does not conclusively show, that the sale was made by the assignees, and not by the defendant; so that it could not be his contract, whatever other agreements may have been made or liabilities incurred by him by reason of his conduct at the sale.

But we do not decide the case upon this ground; because the question whether the sale and memorandum were in fact made by the auctioneer in behalf of the defendant was not passed upon at all at the trial. The ruling of the court, that this question was not open under the pleadings, being wrong, the exceptions must be *Sustained.*